UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-14221-RGS

DAVID KENNETH DRUMM

v.

JOSEPH D. McDONALD, JR.

MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

January 11, 2016

STEARNS, D.J.

Petitioner David Kenneth Drumm, the former Chief Executive Officer (CEO) of the now defunct Anglo Irish Bank, is the subject of an extradition demand by Irish authorities who seek to prosecute him for his alleged fraudulent activities at the Bank.  Drumm was arrested on October 13, 2015, on an Extradition Warrant issued pursuant to the Treaty governing such matters entered between the United States and the Republic of Ireland in 1983.   After proceedings before Magistrate Judge Donald Cabell, on December 15, 2016, Drumm was ordered held without bail pending an extradition hearing scheduled for March 1, 2016.  *See In the Matter of the Extradition of David Kenneth Drumm*, Criminal No. 15-mj-01104-DLC, Dkt. #36 - Dec. 10, 2015 Order on Defendant's Motion for Release on Bail Pending

Extradition Proceeding (Bail Order).  On December 24, 2015, Drumm filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, appealing the denial of bail.[1]  This court held a hearing on the petition with Drumm present on January 8, 2016.

In his petition, Drumm asserts that Magistrate Judge Cabell's decision was flawed by several factual and legal errors, that there is no evidence that he poses a danger to the community or a risk of flight, and that "special circumstances" exist that support his release on bail.  Drumm represents that he has no connections to any countries besides Ireland and the United States and that his appearance in this matter can be secured through a combination of conditions including home confinement, electronic monitoring, and a bond secured by his family's home as well as by properties offered as surety by three family friends.  Drumm seeks a remand to Magistrate Judge Cabell with an order that he fashion appropriate conditions of release.

## BACKGROUND

The facts underlying the extradition request are as follows. As a young executive with Anglo Irish in 1998, Drumm moved with his family to Boston

---

[1]  Bail decisions in an extradition proceeding are properly challenged by way of invocation of the Great Writ.  *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Koskotas v. Roche*, 740 F. Supp. 904, 918 (D. Mass. 1990), *aff'd*, 931 F.2d 169 (1st Cir. 1991).

to establish a U.S. beachhead for the Bank.  The Drumms purchased a home in Sudbury, Massachusetts, and enrolled their children in local schools.  In 2003, Anglo Irish recalled Drumm to Dublin "to serve in various other leadership capacities within the bank," naming him as CEO in 2005.  Pet. at 8.  Although then domiciled in Ireland, the Drumms spent "extensive periods of time in Massachusetts" at their vacation home in Chatham on Cape Cod. *Id.* at 9.

The now defunct Anglo Irish Bank was a commercial and property lender with a limited retail banking business.  Because of the Bank's heavy exposure to real estate, it suffered more than most in the 2008 worldwide market collapse.  Drumm resigned from Anglo Irish in December of 2008, just prior to the nationalization of the Bank by the Irish Government.  Among the questionable practices that subsequently came to light were a large number of off-the-books loans made by the Bank to its directors (or more accurately by the directors to themselves).   Drumm is alleged to owe approximately $11 million "on account of loans made to him by the [B]ank." *In Re David Drumm*, No. 15-cv-10184-LTS (bankruptcy appeal), Dkt. #31 at 3.  After resigning from Anglo Irish, Drumm returned with his family to the United States and purchased a home in Wellesley, Massachusetts, enrolling his daughters in private schools.  Drumm found employment, eventually

becoming CEO of a family asset management company.   On October 14, 2010, Drumm filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code.[2]

In February of 2009, the Irish Financial Services Regulatory Authority filed a complaint with An Garda Síochána, Ireland's national police force, concerning financial irregularities at Anglo Irish. The complaint led to the indictment of a number of former Anglo Irish officers and employees. Drumm was among them.   In July and August of 2014, the Dublin Metropolitan District Court issued thirty-three warrants for Drumm's arrest for alleged offenses based on his "fraudulently concealing Anglo's financial position through various acts, including failing to disclose certain transactions, providing financial assistance to a group of investors to induce them to purchase Anglo's stock, and using circular transactions to inflate the

---

[2] Although not directly relied upon by the Magistrate Judge, the bankruptcy proceedings are troubling.  After a six-day trial, the Bankruptcy Judge issued a 122-page decision denying Drumm discharge of his debts, finding that he fraudulently concealed assets and gave false testimony "motivated first and foremost by [a] desire to shelter assets from seizure by [his] creditors, especially [the Bank]." *Irish Bank Resolution Corp. (In special Liquidations v. Drumm (In re Drumm)*, 524 B.R. 329, 345 (Bankr. Ma. 2015).  On appeal, Judge Sorokin upheld the Bankruptcy Court finding that Drumm, "indisputably a sophisticated debtor," strategically withheld required information from that court. *In re Drumm*, No. 15-cv-10184, Dkt. #31 at 21-22.  The Magistrate Judge noted that the Bankruptcy Court's findings raised doubts about Drumm's general credibility.  Bail Order at 5 n.1.

corporate deposits on Anglo's financial statements." Bail Order at 3. The request for Drumm's extradition followed.[3]  *See* Gov't Ex. 1 (Transmission Letters and Affidavits).

## STANDARD OF REVIEW

In the First Circuit, "[t]he standard of review of a Magistrate Judge's bail determination in extradition cases is narrow. This court's inquiry is limited to the issue of whether or not there were reasonable grounds for the Magistrate Judge's denial of bail." *Kin-Hong v. United States*, 926 F. Supp. 1180, 1184 (D. Mass. 1996), *rev'd on other grounds*, 83 F. 3d 523 (1st Cir. 1996).  "In applying the [reasonable grounds] standard, the court defers to the Magistrate Judge's factual findings, unless they are unsupported by the record, but reviews the Magistrate Judge's legal determinations *de novo.*" *Kin-Hong*, 926 F. Supp. at 1184; *see also In re Extradition of Siegmund*, 887 F. Supp. 1383, 1385 (D. Nev. 1995) (evaluating *de novo* legal question of whether availability of bail constitutes a special circumstance).

---

[3] The request followed the prescribed path under the Treaty – transmission by Irish prosecutorial authorities to the Embassy of Ireland, and from the Embassy to the United States Department of State.  *Id.*  After certification by the Office of the Legal Adviser at the Department of State, the request was reviewed by the Department of Justice's Office of International Affairs and, after approval, was forward to the United States Attorney's Office for the District of Massachusetts, which applied for an arrest warrant. *Id.*

The availability of bail in international extradition cases is extremely limited.[4]  That a right exists at all arises from Chief Justice Fuller's dictum in *Wright v. Henkel*, 190 U.S. 40, 63 (1903), alluding to a common-law authority of circuit courts to admit persons to bail in cases of foreign extradition where "special circumstances" are at play.[5]  As a student of extradition law has noted, "federal judges have [since] struggled to figure out whether they have the authority to grant bail, in what stage of the extradition proceedings they can grant it, and what 'special circumstances' might justify it."  Nathaniel A. Persily, *International Extradition and the Right to Bail*, 34 Stan. J. Int'l Law, 407, 408-409 (1998).  This struggle is reflected in the aphorism that "[t]here is a presumption against bail in extradition cases," as well as in the assignment to the extraditee of the burden of showing: (1) that he is neither a flight risk, nor a danger to the community; and (2) that there

---

[4]  No extradition treaty entered by the United States authorizes bail for fugitives, while some explicitly forbid it. *See* art. 12, U.S. Extradition Treaty with Costa Rica, entered into force Oct. 11, 1991, S. Treaty Doc. No. 98-17, cited in Michael John Garcia & Charles Doyle, *Extradition To and From the United States: Overview of the Law and Recent Treaties* (COng. Research Serv. Mar. 17, 2010) at 21 n.94.

[5]  The government aptly notes that the Supreme Court in *Wright* upheld the denial of bail to a British subject accused of defrauding a corporation of which he was a director.

are "special circumstances [that] justify [his] release on bail."[6] *Kin-Hong*, 83 F.3d at 524, quoting *Wright*, 190 U.S. at 63; *see also Beaulieu v. Hartigan*, 554 F.2d 1, 1-2 (1st Cir. 1977) ("[T]he matter should be approached with caution and bail should be granted only upon a showing of special circumstances.").[7]

The determination of what constitutes a "special circumstance" is fact-intensive and largely left to the Magistrate Judge's discretion, subject to the caveat that in order to qualify as "special" a circumstance must be atypical. This requirement is fairly read as meaning that the "special" circumstance must be more or less unique to the supplicant and not be one that is applicable to extraditees generally. As Judge Learned Hand noted, the

---

[6] Because extradition is not a criminal proceeding, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, and its presumption in favor of pretrial release in most United States criminal cases do not apply. *See Kin-Hong*, 926 F. Supp. at 1185-1186 (collection of cases). "The rationale behind the presumption against bail is that 'extradition cases involve an overriding national interest in complying with treaty obligations.'" *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 56 (D. Mass. 2010), quoting *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990).

[7] It may seem counter-intuitive that a lack of flight risk is not deemed a special circumstance, but in the tangled law defining special circumstances, it is almost uniformly deemed an independent predicate to the ultimate consideration of release. *See, e.g., United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979) ("[E]ven applicant's arguable acceptability as a tolerable bail risk . . . [is] not [a] special circumstance[]."); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989) ("[T]hat [the detainee] is not a risk of flight . . . is not the criterion for release in an extradition case.").

finding should be limited to situations where "the justification is pressing as well as plain, . . . or in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *In re Mitchell*, 171 F. Supp. 289, 289 (S.D.N.Y. 1909).   In those rare cases in which bail is determined appropriate, courts typically particularize as many special circumstances as are thought to be applicable.  *See e.g., Castaneda-Castillo*, 739 F. Supp. 2d at 58-64 (charge pending in Peru more than twenty-five years, incarcerated five years pursuing amnesty petition, facing lengthy extradition proceeding); *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035-1036 (C.D. Cal. 2006) (appellant demonstrated delay and a high degree of uncertainty regarding the merits of the request for extradition); *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 687 (N.D. Ill. 2002) (combination of financial assistance to seriously ill mother, provisional nature of arrest, lengthy extradition proceedings, and criminal charges dropped and then reinstated when petitioner left Hungary held to be sufficient special circumstances).

## THE MAGISTRATE JUDGE'S DECISION

As previously noted, the court's review of denial of bail is limited to whether the record reasonably supports the Magistrate Judge's decision. Magistrate Judge Cabell reviewed each of the circumstances advanced by

Drumm as "special," and rejected them serially (as well as in the aggregate).[8]

On December 10, 2015, in his written decision, Magistrate Judge Cabell ruled

that Drumm "ha[d] not established the presence of special circumstances

sufficient to overcome the presumption in favor of detention in extradition

cases." Bail Order at 1. While noting the government's concession that

Drumm poses no danger to the community, the Magistrate Judge made a

tentative finding that "the seriousness of the charges pending against

[Drumm] in Ireland provides [him] with an incentive to flee," and that his

"background and experience in international matters and his presumed

substantial assets provide him with the ability to flee if he were so inclined."

*Id.* at 5. That said, the Magistrate Judge "assume[d] without deciding . . .

that it would be possible to fashion a set of conditions to adequately mitigate

the risk of flight." *Id.*

 With regard to special circumstances, the Magistrate Judge found that

"Ireland (through the U.S. Attorney) has specifically asked that [Drumm] be

---

 [8] Somewhat surprisingly, there is no agreement among courts on whether the standard of proof that applies to a defendant advocating special circumstances is by clear and convincing evidence or by a preponderance. *See* Fed. Judicial Ctr., *International Extradition: A Guide for Judges* 7-8 (2014) (noting a division of authority on the issue). Magistrate Judge Cabell adopted the government's position that Drumm was held to the clear and convincing standard, which appears consistent with some decisions in this district. In any event, my conclusions would not be altered by any mutation in the burden of proof.

detained pending his return to Ireland, underscoring . . . the diplomatic necessity for detention." *Id.* at 4-5.[9]  The Magistrate Judge also noted that there are factual distinctions between Drumm and the Anglo Irish employees granted bail in Ireland – they are subordinates charged with fewer crimes, all are cooperating with Irish authorities, and they are all in Ireland, not the United States.[10]  As to Drumm's argument that Ireland's delay in prosecuting him underscores the lack of "diplomatic necessity," the Magistrate Judge held that Ireland has actively investigated the case since 2009 (the "normal passage of time inherent in the litigation process") and that Drumm's relocation to the United States, "at least in part" forestalled the bringing of charges against him. *Id.* at 8-9, citing *Kin-Hong,* 83 F.3d at 525.   As for Drumm's plea that he is the sole source of income for his family, the Magistrate Judge observed that "unwelcome financial strain . . . is present in almost every case where a defendant with family faces detention pending adjudication." *Id.* at 10.  The Magistrate Judge ultimately ruled that, even considering all of the purported special circumstances in the aggregate,

---

[9]  This finding may have been in error as nothing in the present record indicates that Ireland made an explicit request that Drumm be denied bail.

[10]  According to the government, the one co-defendant who was out of the country when the indictments were issued returned to Ireland of his own volition.  Gov't Resp. at 10.

Drumm could not "distinguish [his] case from other extradition cases." *Id.* at 11.  Hence, he denied the application for bail.

## DISCUSSION

The centerpiece argument in Drumm's petition is a lack of "diplomatic necessity," as reflected in the lack of a formal detention request by the Irish authorities, and the likelihood that he (or an American citizen awaiting extradition in Ireland) would be granted bail by the Irish courts.  "Diplomatic necessity" may not be the pigeon hole best fitted to the argument. "Diplomatic necessity" is perhaps better viewed as the "special circumstance" justifying the denial of bail to an extraditee.  In *Wright,* the Supreme Court summarized the policy concerns implicated by an extradition request as follows.

> The demanding government, when it has done all that the treaty and law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil[l] if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused would be surrounded with serious embarrassment.

*Wright*, 190 U.S. at 62.[11]  Following *Wright's* lead, a number of courts have since cited the potential of damage to the foreign policy interests of the

---

[11] As *Wright* explains, the obligations of the demanding country are defined by treaty.  The extradition treaty between the United States and Ireland does not require the demanding State to make a specific request for

United States as the rationale supporting the nearly conclusive presumption against bail in extradition cases.  *See* Joseph J. Fougere, *Let's Try This Again: Reassessing the Right to Bail in Cases of International Extradition*, 42 Colum. J. L. & Soc. Probs. 177, 199-200 & n.132 (Winter 2008).  While the Magistrate Judge agreed with Drumm that the possibility of being granted bail in the demanding State (Ireland) could constitute a "special circumstance" in an appropriate case, I do not agree.[12]  Extradition is largely a concern of the Executive Branch.  Consequently, domestic judicial policies, such as the preference for bail in most domestic criminal cases, have no relevance to a district court's review of an extradition request.  Of even less relevance are the bail practices of the demanding State (here Ireland), which are often beyond the competence or predictive ken of a United States court.[13]

---

detention (which in any event is implicit in the issuance of an extradition warrant).  Consequently, I read little significance in the fact that Ireland (if it is in fact the case) made no specific request for Drumm's detention.

[12] I recognize that another Magistrate Judge in this district has thought the same.  *See Castenada-Castillo*, 739 F. Supp. 2d at 59 (Dein, M.J.).  I believe, however, that this sentiment is a mistake in an otherwise fine decision.

[13] In so saying, I do not discredit the assertion in the Staines (Drumm's Irish counsel) Affidavit that, in at least seven recent instances, the Irish courts have granted bail to Americans resident in Ireland who were the subject of a U.S. extradition request.  I simply do not find that evidence legally relevant.  I am similarly unpersuaded by the opinion of an Assistant U.S. Attorney (cited by Drumm) expressing frustration with the supposed

Foreign bail practices should have no role in shaping the discharge by a United States court of its limited duties in adjudicating an extradition demand. *See In re Siegmund*, 887 F. Supp. at 1386-1387.

Drumm's second "special circumstance," the alleged seven-year delay preceding Ireland's extradition request, was rejected by the Magistrate Judge with little discussion. That may well stem from his implicit recognition that the length of the investigation by the demanding State is not a matter of concern for the receiving State.[14] If the delay impinged on the due process rights of the extraditee (to the extent they are recognized by the demanding State), or offend a local statute of limitations, these are matters for the courts of the demanding State to resolve. On the other side of this coin, delay attributable to U.S. authorities in prosecuting an extradition demand could constitute a special circumstance justifying bail. But as in *Kin-Hong*, at this point the prospect of prolonged proceedings is speculative at best. *Id.*, 83

---

lack of cooperation on the part of the Irish authorities in honoring U.S. extradition requests. *See* Pet.'s Further Support, at 7.

[14] The two Magistrate Court decisions that have held differently appear to be outliers in this regard. *See In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006); *In the Matter of the Extradition of Kapoor*, 2011 WL 2296535 (E.D.N.Y. June 7, 2011). Because I disagree on the fundamental point, I have not considered Magistrate Judge Cabell's suggestion that the delay in the investigation was in some part attributable to Drumm for deciding to return to Massachusetts.

F.3d at 525.   The Magistrate Judge reasoned that because the hearing, scheduled to take place in less than seven weeks, is not a full-blown adversarial trial, there is no reason to believe that it will not be concluded expeditiously.[15]   If his forecast proves wrong, and any delay is a result of dilatory conduct by the government (which asserts that it will be fully ready to proceed on March 1), this is not a one-off appeal and it is open to Drumm to then renew his request for bail.

Drumm's third argument, that the "utter dependency" of his wife and daughters on his ability to function as the sole breadwinner of his family, should constitute a special circumstance, was dismissed by the Magistrate Judge, not callously, but with the accurate observation that this circumstance is not special, but rather one that applies to most incarcerated defendants

---

[15] An extradition hearing typically is limited to determining: "(1) whether there is probable cause to believe that there has been a violation of the laws of the foreign country requesting extradition, (2) whether such conduct would have been criminal if committed in the United States, and (3) whether the fugitive is the person sought by the foreign country for violating its laws." *Nezirovic v. Holt*, 779 F.3d 233, 236 (4th Cir. 2015), quoting *Gon v. Holt*, 774 F.3d 207, 210 (4th Cir. 2014) (internal quotation marks omitted). Drumm's suggested complicity defense, that is, that the Irish government abetted his conduct "in a collaborative effort to stave off further financial collapse at the height of the worldwide financial crisis in 2008," and his defense of advice of counsel, Pet.'s Further Support at 10-11, have no place in the extradition hearing.   They are, as is true with all other substantive defenses (other than a lack of probable cause), matters for the Irish courts to consider.

who have families.[16] *See Matter of Extradition of Russell,* 805 F.2d 1215, 1217 (5th Cir. 1986) ("The district court agreed with the magistrate that financial and emotional hardship was present in almost all cases and therefore did not constitute a "special circumstance.").

Finally, Drumm argues that he is being held in "intolerable and inhumane" conditions of confinement that have impacted his ability to confer with his counsel and subjected him to "safety risks."[17] Courts have not recognized "[t]he need to consult with counsel, gather evidence and confer with witnesses" as an extraordinary circumstance because "all incarcerated defendants need to do these things." *In re Extradition of Smyth*, 976 F.2d 1535, 1535-1536 (9th Cir. 1992). While the Magistrate Judge stated in his decision that the safety concerns raised in the Declaration have been resolved, I am not certain that at present this is the case. Consequently, I will remand this aspect of the petition to the Magistrate Judge with

---

[16] Drumm also states that his friends are willing to post bond and that his employer would permit him to work from home to continue earning his current salary. While Drumm's friends and business associates' confidence in him is admirable, it does not establish a special circumstance. *See In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1220 (D. Nev. 1993).

[17] The "safety risks" are discussed in a Declaration filed by Drumm's counsel, which is under seal. Consequently, I will not discuss the specifics of its contents.

instructions to enter such orders as are consistent with jail security to facilitate Drumm's ability to work with counsel in preparing for the March 1 hearing (including means for review of relevant documents).[18]

ORDER

Because the court discerns no reversible error in the Magistrate Judge's decision denying bail, the petition is <u>DENIED</u>.  The Clerk will <u>REMAND</u> the case for the limited purpose identified in this court's decision.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[18] At the hearing on this petition, Drumm's counsel praised the U.S. Attorney's Office for its positive and cooperative efforts in seeking to address the issues raised in the Declaration.  I have no reason to believe that this cooperation will not continue.